**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

DONNELL LONG,                                    *

                Plaintiff,            *

    v.                                              *         Civil Action No. AW-06-873

                                    *

MONTGOMERY COUNTY,
MARYLAND, *et al.*,                               *

               Defendants.           *

                          * * * * *

<u>**MEMORANDUM OPINION**</u>

This action involves a suit by Donnell Long ("Long" or "Plaintiff") against Montgomery County, Maryland ("the County") and Montgomery County Police Officers Crandell and Godoy ("the Officers") (collectively, "Defendants"). Long alleges that the Officers violated his constitutional rights when they handcuffed, searched, detained, and arrested him following a traffic stop. Long also alleges that the Officers' actions are traceable to some governmental policy or custom of the County. In his Amended Complaint, Long asserts claims under 42 U.S.C. § 1983, the Maryland Declaration of Rights, and state tort law. Now pending before the Court are Defendants' Partial Motion to Dismiss Plaintiff's Original Complaint [4] and Partial Motion to Dismiss Plaintiff's Amended Complaint [8]. The Court has reviewed the entire record, as well as the Pleadings with respect to the instant motions. No hearing is deemed necessary. *See* Local Rule 105.6 (D. Md. 2004). For reasons set forth below, the Court will grant-in-part and deny-in-part Defendants' Partial Motion to Dismiss Plaintiff's Amended Complaint and deny Defendants' Partial Motion to Dismiss Plaintiff's Original Complaint as moot.

**I.      FACTUAL & PROCEDURAL BACKGROUND**

1

The following facts are drawn from Long's amended complaint and are taken as true for purposes of Defendants' motion to dismiss. Long, an African-American male, is the owner and proprietor of two restaurants located in Largo, Maryland. In the early morning hours of February 23, 2006, Long was driving in Silver Spring, Maryland with the general manager and the bar manager of one of his restaurants, in an automobile owned the bar manager's sister.

At approximately 1:40 a.m., the car in which they were traveling was stopped by Officers Crandell and Godoy. Long claims that he had not committed any traffic violations prior to being pulled over and believes that the stop was the result of racial profiling. Following the traffic stop, Officer Godoy approached the vehicle and informed Long that one of the vehicle's tags was suspended because of insurance. In response, Plaintiff's bar manager explained that the car was her sister's, that the insurance was up-to-date, and that the car's insurance status might not be accurately reflected in the State of Maryland's vehicle registry. At that point, the Officers requested that Long exit the vehicle and roughly handcuffed him after he complied. The Officers then searched Long, over his objections, and demanded that Long show them some identification. Long explained that although the only identification he had at the time was a food service certificate, the certificate was a government-issued document and that it adequately stated who he was. The Officers called Long a "smart-ass," told him he had "all the mouth," and proceeded to search the car and its trunk, despite being told by Long that he did not consent to a search of the automobile.

After approximately forty minutes, the Officers removed Long's handcuffs and permitted him to sit in the vehicle he had been driving. Long and his staff were then kept sitting in the car for an additional half hour. Officer Crandell then presented Long with three traffic citations—for driving a vehicle with a suspended registration, for failing to display his license upon demand, and

for failing to notify the DMV of an address change—and requested that Long sign the tickets. Long refused, arguing that the vehicle was not his, that he was not responsible for the lapsed registration, and that he was simply driving his exhausted employees home to prevent them from injuring themselves or others. In response, Officer Crandell gave Long a fourth ticket, for refusing to sign the other three, placed Long under arrest, and transported him to the police station. At the station, a police sergeant commented that Long "needed to come out here looking important, smart for your 'peeps.'" Long asked what the sergeant meant by "peeps," and whether it was a form of racial slur, to which the sergeant replied that Long knew what it meant. After approximately four hours, Long was released. On April 4, 2006, Long challenged the traffic charges in Montgomery County District Court, where he pled, and was found, not guilty on all charges.

On April 5, 2006, Long filed his original complaint in this Court, claiming deprivation of civil rights under 42 U.S.C. § 1983, violations of the Maryland Declaration of Rights, and various common law torts. On May 19, 2006, Defendants filed their initial partial motion to dismiss, arguing that Long had failed to state a § 1983 claim against the County because he had not alleged that his constitutional injuries were the result of a governmental policy or custom. Defendants also moved to dismiss Long's negligence claim against the County, contending that it was barred by governmental immunity. In response, Long filed an amended complaint, in which he limited his negligence claim to the Officers and attempted to cure his § 1983 claim against the County. Defendants then filed another partial motion to dismiss, arguing that Long still failed to allege facts sufficient to hold the County liable under § 1983, and that Long's negligence claims against the Officers were precluded by the doctrine of public official immunity. Long has filed a response, Defendants a reply, and the Court now issues its opinion.

3

II.     **STANDARD OF REVIEW**

Under Rule 12(b)(6), dismissal of a complaint for failure to state a claim is not appropriate "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). In determining whether to dismiss a complaint pursuant to Rule 12(b)(6), this Court must view the well-pleaded material allegations in the light most favorable to the plaintiff and accept the factual allegations contained within the plaintiff's complaint as true.  *See Flood v. New Hanover County*, 125 F.3d 249, 251 (4th Cir. 1997); *Chisolm v. TranSouth Finan. Corp.*, 95 F.3d 331, 334 (4th Cir. 1996). The Court, however, is "not bound to accept as true a legal conclusion couched as a factual allegation." *See Papasan v. Allain*, 478 U.S. 265, 286 (1986) (citing *Briscoe v. LaHue*, 663 F.2d 713, 723 (7th Cir. 1981)); *Young v. City of Mount Ranier*, 238 F.3d 576, 577 (4th Cir. 2001) (the mere "presence . . . of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6)").  Nor is the Court "bound to accept [Plaintiff's] conclusory allegations regarding the legal effect of the facts alleged."  *United Mine Workers of Am. v. Wellmore Coal Corp.*, 609 F.2d 1083, 1085-86 (4th Cir. 1994); *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989). Thus, a complaint may be dismissed as a matter of law if it lacks a cognizable legal theory *or* if it alleges insufficient facts to support a cognizable legal theory. *See Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533-34 (9th Cir. 1984) (citing 2A J. Moore, Moore's Federal Practice ¶ 12.08 at 2271 (2d ed. 1982)).

III.    **ANALYSIS**

**A. Plaintiff's *Monell* Claim**

Defendants have moved to dismiss Plaintiff's § 1983 claim against the County, arguing that

4

Plaintiff has failed to adequately allege the existence of a municipal policy or custom that caused his injuries. A municipality, like the County, may not be held vicariously liable under § 1983 for the constitutional violation of an employee merely because of the existence of an employment relationship. *Monell v. Dept. of Social Servs.*, 436 U.S. 658, 692-94 (1978). Rather, under *Monell* and its progeny, the County could be subject to § 1983 liability only when "it causes a deprivation through an official policy or custom." *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999). That policy or custom must have been the "moving force" behind the alleged constitutional violations. *Polk County v. Dodson*, 454 U.S. 312, 326 (1981).

In Plaintiff's Amended Complaint, the sum total of the allegations regarding a County policy or custom are as follows:

> Plaintiff's Constitutional injury was caused by an action (of Defendants Crandell and Godoy) taken in execution or implementation of a governmental policy or custom (of Defendant Montgomery County).

> [T]his governmental policy or custom (of Defendant Montgomery County) is the "moving force" behind Plaintiff's Constitutional deprivation.

> [T]here is a definite causal link between the execution (by Defendants Crandell & Godoy) of the governmental policy or custom (of Defendant Montgomery County) and Plaintiff's Constitutional deprivation.

> [T]he governmental policy or custom (of Defendant Montgomery County) is no broad, general governmental policy or custom; rather, it is a specific policy affirmatively linked to Plaintiff's allegations.

(Am. Compl. ¶¶ 75-78.) These allegations are insufficient to state a § 1983 claim against a municipality. It is not enough for Plaintiff to vaguely allege that some indeterminate County policy was the cause of his injuries, or to simply recite, as Plaintiff does here, the key language of the

relevant cases; instead, Plaintiff must advance some minimal factual allegations to underpin his assertion of an impermissible governmental practice. *See Lanford v. Prince George's County, Md.*, 199 F. Supp. 2d 297, 305 (D. Md. 2002); *Lytle v. Brewer*, 77 F. Supp. 2d 730, 743 (E.D. Va. 1999).

Plaintiff argues that to dismiss his § 1983 claim against the County for failure to state a claim would be to subject him to the "heightened pleading standard" that the Supreme Court rejected in *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993). This Court disagrees. In *Leatherman*, the Supreme Court held that the Fifth Circuit's heightened pleading standard for civil rights complaints alleging municipal liability under § 1983 could not be reconciled with the liberal notice pleading requirements of Fed. R. Civ. P. 8(a). *Id.* at 164. In expounding on the meaning of *Leatherman*, the Fourth Circuit stated that "the Supreme Court's rejection of the Fifth Circuit's 'heightened pleading' standard in *Leatherman* constitutes a rejection of the specific requirement that a plaintiff plead *multiple instances* of similar constitutional violations to support an allegation of municipal policy or custom." *Jordan by Jordan v. Jackson*, 15 F.3d 333, 339 (4th Cir. 1994) (emphasis added). The *Leatherman* decision, however, did not relieve plaintiffs asserting municipal liability under § 1983 from pleading "the existence of an official policy or custom that is fairly attributable to the municipality and that proximately caused the deprivation of their rights." *Id.* at 338.

Here, Plaintiff is not being required to plead multiple instances of unconstitutional conduct in order to sustain his allegation of an unconstitutional County policy or custom; instead, he is merely being asked to articulate the nature of the County policy that caused his alleged injuries. This is not an onerous task. *See, e.g., Jackson* at 340 (plaintiffs adequately stated a claim for municipal liability when they alleged that county "maintained a policy of providing inadequate training to their

employees both on how to determine where a summary removal [of a child from his parents' custody] was proper and on the statutory procedural requirements following removal" and "encouraged the removal of any child left alone, regardless of the circumstances, and trained their employees accordingly"); *James v. Frederick County Pub. Schs.*, No. JFM-06-555, 2006 WL 2173226, *5 (D. Md. Aug. 1, 2006) (plaintiff adequately stated *Monell* claim by alleging that local police department knew that its "officers and/or agents were engaging in unconstitutional conduct of implementing excessive force, handcuffing and arresting children as young as eight years of age"); *Thompson v. Mayor and Town Council of La Plata, Md.*, No. AW-02-2553, 2001 WL 436158, *2 (D. Md. Apr. 13, 2001) (section 1983's pleading requirements satisfied where plaintiffs alleged custom and practice of "enforcing disorderly conduct, noise abatement, nuisance and other petty misdemeanor offenses and regulatory ordinances much more rigorously against persons of African-American ancestry"). In contrast to the above-cited cases, Plaintiff fails to point to anything that could be fairly termed a County policy, practice, or custom. Rather, Plaintiff generally asserts that the Officers' allegedly unconstitutional conduct resulted from "a governmental policy or custom," the nature and substance of which he does not specify. This allegation is so vague that it fails to provide the County with fair notice of Plaintiff's *Monell* claim and the grounds supporting it. *See Lytle*, 77 F. Supp. 2d at 743 (dismissing municipal liability claim as inadequately pled where plaintiff merely asserted that all of the acts alleged in the complaint occurred pursuant to a governmental custom). Consequently, Plaintiff's § 1983 claim against the County shall be dismissed for failure to state a claim upon which relief may be granted.

**B. Plaintiff's Negligence Claims**

Defendants argue that Plaintiff's negligence claim against the Officers[1] is barred by the doctrine of public official immunity. Under Maryland law,[2] there are three prongs that must be satisfied in order for a government representative to qualify for immunity: (1) he or she must be a public official; (2) his or her tortious conduct must have occurred while performing discretionary acts in furtherance of official duties; (3) the acts must be done without malice. *Williams v. Mayor & City Council of Baltimore*, 753 A.2d 41, 62 (Md. 2000). Maryland case law establishes that, while performing their duties, police officers are public officials and, thus, fall within the scope of qualified immunity as to their discretionary acts. *Id.* at 61. In addition, law enforcement actions involving the exercise of independent judgment, such as the traffic stop and arrest at issue here, constitute discretionary, as opposed to ministerial, acts. *See Ashburn v. Anne Arundel County*, 510 A.2d 1078, 1081-82 (Md. 1986). Therefore, unless the Officers acted with malice, the public official immunity doctrine shields them from Plaintiff's negligence claim.

Malice is established by proof that defendants intentionally performed "an act without legal justification or excuse, but with an evil or rancorous motive influenced by hate, the purpose being

---

[1]There has been some confusion over whether Plaintiff is also asserting a claim of negligence against the County. Although the caption of the negligence count in the Amended Complaint names only the Officers, the body of that count contains allegations of negligence against the County. In his opposition brief, Plaintiff clarifies that he is not alleging negligence against the County; thus, to the extent that the Amended Complaint may assert any claims of negligence against the County, those claims shall be dismissed.

[2]Maryland's choice of law rules apply here. *See ITCO Corp. v. Michelin Tire Corp.*, 722 F.2d 42, 49 n.11 (4th Cir. 1983) (holding that in federal question cases, a district court entertaining pendent state claims should follow the choice of law rules of the forum state) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 497 (1941)). For tort claims, Maryland adheres to the doctrine of *lex loci delicti*, i.e., "it applies the law of the jurisdiction where the alleged wrong occurred." *Cremi v. Brown*, 955 F. Supp 499, 522 (D. Md 1997) (citations omitted). Therefore, because the Officers' allegedly tortious conduct occurred in Maryland, Maryland law is controlling.

to deliberately and wilfully injure the plaintiff." *Williams*, 753 A.2d at 57.  Here, Plaintiff alleges that he committed no traffic infractions on the night in question and that the Officers initiated the vehicle stop without probable cause or reasonable suspicion of unlawful conduct. Plaintiff further claims that the Officers were engaged in racial profiling, stopping the car he was driving "because the vehicle contained African-Americans, late at night." (Compl. ¶ 17.) Plaintiff's allegations of racial bias, if true, could support a finding of malice that would pierce the Officers' public official immunity. *See Briddell v. Chester*, 206 F. Supp. 2d 733, 740 (D. Md. 2002) (stating that evidence that police officer was motivated by racial animus could support a claim of malice); *Tierco Maryland, Inc. v. Williams*, 849 A.2d 504, 526 n.29 (Md. 2004) ("racial animus may be a potential basis for a finding of actual malice"); *Nelson v. Kenny*, 710 A.2d 345, 351 (Md. 1998) (holding that the possibility that the defendant police officer's actions were motivated by racial hatred, which could give rise to a reasonable inference of actual malice, precluded summary judgment). Moreover, "[a]t the nascent stage of litigation presented by a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Federal Rules require only a general pleading of malice." *Beuster v. Equifax Info. Servs.*, 435 F. Supp. 2d 471, 480 (D. Md. 2006) (citations and quotation marks omitted). Because Plaintiff has alleged facts that might support a finding of malice, his negligence claim against the Officers survives the instant motion to dismiss.

IV.     **<u>CONCLUSION</u>**

For all of the aforementioned reasons, the Court will grant-in-part and deny-in-part Defendants' Partial Motion to Dismiss Plaintiff's Amended Complaint [8]. The motion is granted with respect to Plaintiff's § 1983 claim against the County, and denied with respect to Plaintiff's negligence claim against the Officers. Defendants' Partial Motion to Dismiss Plaintiff's Original Complaint [4] shall be denied as moot. An Order consistent with this Opinion will follow.

Date: <u>August 31, 2006</u>                    <u>            /s/            </u>
                                                Alexander Williams, Jr.
                                                United States District Court